UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RAMIL AGLES SERRANO,

Petitioner,

v.

JASON BENNETT,

Respondent.

Case No. C23-5600-JHC-SKV

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Petitioner Ramil Serrano is a Washington prisoner who is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He seeks relief under 28 U.S.C. § 2254 from his 2019 convictions in Grays Harbor County Superior Court on charges of rape of a child in the first degree and child molestation in the first degree. *See* Dkt. 7 at 1. Respondent has filed an answer responding to Petitioner's federal habeas claims and has submitted relevant portions of the state court record. Dkts. 13, 14. Petitioner has filed a response to Respondent's answer. Dkt. 15. This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, all briefing of the parties, and the state court record, concludes that the petition should be denied, and this action should be dismissed with prejudice.

## II. BACKGROUND

### A. Factual Background

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's crimes and convictions as follows:

> Poung Jo Sem has a daughter, S.S. [footnote omitted] Around April 2016, Ms. Sem allowed a coworker, Ramil Serrano, to live with her and her daughter. S.S. was eight years old at the time. Two years later, Mr. Serrano moved out.
>
> About six months after Mr. Serrano moved out, S.S.'s aunt visited. She spoke with S.S. about "good touch" and "bad touch." Report of Proceedings (RP) at 81. S.S. told her aunt that Mr. Serrano had touched her in a bad way. The aunt told Ms. Sem, and she reported it to police. In September 2018, Lisa Wahl, a sexual assault nurse examiner (SANE), performed a sexual assault evaluation on S.S.
>
> Police arrested Mr. Serrano and the State charged him with one count of child rape in the first degree and one count of child molestation in the first degree. Mr. Serrano waived his right to a jury trial and the case proceeded to a bench trial.
>
> At trial, Ms. Wahl testified that she spoke with S.S. at length about her body, covering everything from head to toe. S.S.'s demeanor changed when she began talking about why she was there and she had difficulty talking about what had happened.
>
> When asked who they were talking about, S.S. wrote the name "Ramil." RP at 155. Ms. Wahl and S.S. then went over the male and female bodies with anatomically correct drawings to confirm which body parts were involved. S.S. told Ms. Wahl that she was in her house when Mr. Serrano put his penis in her vagina and this caused her pain. S.S. told Ms. Wahl that Ramil had done this over 10 times.
>
> Ms. Wahl testified about her physical examination of S.S. She found S.S. to be healthy and normal, which she said was not unusual in cases where children delayed disclosure of their abuse. A blood test revealed that S.S. had herpes simplex virus one. Ms. Wahl testified that the virus did not mean that S.S. was sexually abused, but could be the result of skin to skin contact.
>
> Detective Jeff Weiss testified that he interviewed Mr. Serrano twice and both interviews were tape recorded. During the second interview, Mr. Serrano broke down and started crying. He admitted that he and S.S. liked to wrestle upstairs on the bed. He said that "[S.S.] wore silky bottom pajamas, which were

> really thin and tight, and when he—when [S.S.] pulled his pants down she was on top of him and obviously his penis was up against her vagina." RP at 134.
>
> S.S. testified that when her mother was at work she and Ramil would watch TV on her mother's bed. While watching TV, he would tell her to take off her clothes and he would take his clothes off, too. S.S. testified that Ramil would then put his privates on her privates, on her skin, and put his privates in her privates. When asked what "privates" meant, S.S. gestured to her genital area. RP at 52. S.S. testified that she would be laying down on the bed and Ramil would be in front of her and she would be on her back. S.S. described the feeling of Ramil putting his privates inside hers as "weird." RP at 58. She testified this had happened "a lot" with Ramil. RP at 72.
>
> The trial court convicted Mr. Serrano on both counts. It found S.S.'s testimony credible and Mr. Serrano's testimony not credible. It found that Mr. Serrano had placed his penis on S.S.'s bare skin without penetration and that it was clearly done for sexual gratification purposes. It additionally found that Mr. Serrano had penetrated S.S. multiple times.
>
> The trial court sentenced Mr. Serrano to 160 months of confinement. In addition, it imposed nonrestitution financial obligations and ordered interest to accrue on those obligations.

Dkt. 14, Ex. 2 at 1-4 (footnote omitted).

### B. Procedural History

Petitioner appealed his convictions to the Washington Court of Appeals. *See* Dkt. 14, Exs. 3-6. Among the issues raised by Petitioner on direct appeal were that the state failed to present sufficient evidence to support his convictions for rape of a child in the first degree and child molestation in the first degree, and that convicting him of both offenses violated his right to be free from double jeopardy. *Id.*, Exs. 3, 6. On July 1, 2021, the Washington Court of Appeals issued an unpublished opinion affirming Petitioner's convictions.[1]

[1] Petitioner also argued on appeal that the trial court erred in imposing interest on his non-restitution legal financial obligations. *See* Dkt. 14, Ex. 3. The state conceded the error and the Court of Appeals remanded the case to the trial court to strike the interest provision. *See id.*, Ex. 2 at 29-30.

Petitioner thereafter filed a petition for review with the Washington Supreme Court in which he identified his sufficiency of the evidence claim as the only issue upon which he was seeking review. Dkt. 14, Ex. 7 at 4. The Supreme Court denied Petitioner's petition for review without comment on November 3, 2021, and the Court of Appeals issued its mandate terminating direct review on November 9, 2021. *Id*., Exs. 8, 9.

In October 2022, Petitioner filed a personal restraint petition in the Washington Court of Appeals. Dkt. 14, Ex. 10. Petitioner alleged therein that the trial court erroneously permitted expert testimony that violated its own pretrial ruling limiting such testimony, and that appellate counsel rendered ineffective assistance when he failed to challenge on appeal the trial court's ruling on objections to the expert's testimony. *See id*., Ex. 10 at 2. On December 5, 2022, the Washington Court of Appeals issued an order dismissing Petitioner's personal restraint petition. *Id*., Ex. 11.

Petitioner sought further review in the Washington Supreme Court, and he identified a single issue in his motion for discretionary review, *i.e.*, that appellate counsel was ineffective for failing to challenge on appeal the evidentiary error relating to the expert's testimony. *See* Dkt. 14, Ex. 12 at 3-4. The Commissioner of the Washington Supreme Court issued a ruling denying review on March 8, 2023. *Id*., Ex. 13. Petitioner moved to modify the Commissioner's ruling, but that motion was denied without comment on June 7, 2023. *See id*., Exs. 14, 15. Petitioner now seeks federal habeas review of his convictions.

## III. GROUNDS FOR RELIEF

Petitioner identifies the following four grounds for relief in his federal habeas petition:

**Ground One:** Ineffective Assistance of Appellate Counsel.

**Ground Two:** Abuse of Discretion.

**Ground Three:** Insufficient Evidence.

**Ground Four:** Double Jeopardy

Dkt. 7 at 5, 7, 8, 10.

## IV. DISCUSSION

Respondent asserts in his answer that Petitioner has exhausted only two of his four claims for relief. *See* Dkt. 13 at 5. Specifically, Respondent concedes that Petitioner properly exhausted his first and third grounds for relief by fairly presenting those claims to the Washington Supreme Court as federal claims. *Id*. Respondent argues, however, that the state courts reasonably denied those claims. *See id*. at 14-21. Respondent asserts that Petitioner failed to properly exhaust his state court remedies with respect to his second and fourth grounds for relief because he did not present those claims to the Washington Supreme Court in either his petition for review on direct appeal or in his motion for discretionary review on collateral review. *See id*. at 5, 7-8. Respondent argues that those claims are now procedurally barred, but that the Court may deny those claims on the merits notwithstanding the lack of proper exhaustion in accordance with 28 U.S.C. § 2254(b)(2). *Id.* at 5, 7-9.

### A. Exhaustion and Procedural Default

#### *1. Legal Standard*

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims

to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

"In order to 'fairly present' an issue to a state court, a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)). *See also Picard*, 404 U.S. at 275-78 (1971) (proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory on which the claim is based). A habeas petitioner who fails to meet a state's procedural requirements for presenting his federal claims deprives the state courts of the opportunity to address those claims in the first instance. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

As noted above, at issue here are Petitioner's second and fourth grounds for relief, which Respondent claims have not been properly exhausted. Petitioner asserts in his second ground for relief that the trial court abused its discretion when it set parameters for the testimony of the state's expert witness during a pretrial hearing but then allowed the expert witness to present testimony that exceeded those limitations during trial. *See* Dkt. 7 at 7. The record before this Court shows that Petitioner presented this claim to the Washington Court of Appeals in his personal restraint petition, but failed to present the claim to the Washington Supreme Court in his motion for discretionary review. *See* Dkts. 14, Exs. 10, 12. Because Petitioner did not present his second ground for federal habeas relief to the highest state court for review, the claim has not been properly exhausted.

Petitioner asserts in his fourth ground for relief that his convictions for both rape of a child and child molestation violated his right to be free from double jeopardy. *See* Dkt. 7 at 10. The record before this Court shows that Petitioner presented this claim to the Washington Court of Appeals on direct appeal, but he failed to present the claim to the Washington Supreme Court in his petition for review. *See* Dkt. 14, Exs. 6, 7. Because Petition did not present his fourth ground for federal habeas relief to the highest state court for review, the claim has not been properly exhausted.

When a petitioner fails to exhaust his state court remedies and the court to which the petitioner would be required to present his claims in order to satisfy the exhaustion requirement would now find the claims to be procedurally barred, there is a procedural default for purposes of federal habeas review. *Coleman*, 501 U.S. at 735 n.1. Respondent argues that Petitioner, having failed to properly exhaust his claim in the state courts, would now be barred from doing so under state law. Respondent is correct.

RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's judgment became final for purposes of state law on November 9, 2021, the date the Court of Appeals issued its mandate terminating direct review, and thus the time for seeking collateral review in the state courts has expired. *See* RCW 10.73.090(3)(b). State law provides for exceptions to the one-year time limit in certain instances. As relevant here, pursuant to RCW 10.73.100(3), the one-year time limit specified in RCW 10.73.090 does not apply to a petition that is based solely on the ground that the conviction was barred by double jeopardy. However, even assuming Petitioner's double jeopardy claim were exempted from the one-year limitation, because he previously pursued a collateral challenge in the state courts, the state courts are not

likely to entertain another such challenge from Petitioner. *See* RCW 10.73.140; RAP 16.4(d). This Court therefore concludes that Petitioner has procedurally defaulted on his second and fourth grounds for relief.

When a state prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To satisfy the "cause" prong of the cause and prejudice standard, a petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Petitioner appears to argue in his response to Respondent's answer that cause exists to excuse his procedural default of his double jeopardy claim. *See* Dkt. 15 at 2. Petitioner notes that he presented his double jeopardy claim to the Washington Court of Appeals in his *pro se* statement of additional grounds on direct appeal, and he suggests the reason the claim was not properly presented to the Washington Supreme Court was that the Court of Appeals failed to

exercise its discretion to request additional briefing on the issue from counsel. *See id*. However, Petitioner fails to make clear how the Court of Appeals' failure to request additional briefing on the issue in any way prevented him from presenting his claim to the Washington Supreme Court. Petitioner's appellate counsel had the opportunity to present the issue in the petition for review submitted to the Supreme Court on direct appeal but elected not to do so. Neither the Court of Appeals' failure to request additional briefing on the double jeopardy issue, nor trial counsel's decision not to raise the issue in the petition for review, prevented Petitioner from complying with the state procedural rules for proper presentation of claims. Petitioner therefore fails to establish cause for his default of his double jeopardy claim.

The Court also observes that Petitioner makes no effort to show cause or prejudice for his default of his challenge to the trial court's alleged evidentiary error, nor does he make any showing that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. Petitioner therefore fails to demonstrate that his unexhausted claims are eligible for federal habeas review. Accordingly, Petitioner's federal habeas petition should be denied with respect to his second and fourth grounds for relief.[2]

**B. Section 2254 Merits Review**

*1. Federal Habeas Standard, 28 U.S.C. § 2254*

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) the decision

[2] Because this Court concludes that Petitioner's second and fourth grounds for relief are procedurally barred, it need not address the merits of these two claims.

was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id.* at 71. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be

contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

Under § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." "To show such an error occurred, the petitioner must establish that the state court's decision rested on a finding of fact that is '*objectively* unreasonable.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004)) (emphasis in original). "Factual findings are objectively unreasonable if they are unsupported by sufficient evidence in the state court record." *Tong Xiong v. Felker*, 681 F.3d 1067, 1074 (9th Cir. 2012). In addition, the Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*2. Ineffective Assistance of Appellate Counsel*

Petitioner asserts in his first ground for relief that his appellate counsel rendered ineffective assistance when he failed to assert a claim concerning the trial court's failure to sustain an objection from Petitioner's trial counsel regarding the scope of testimony presented by the state's expert witness. Dkt. 7 at 5. Petitioner maintains that the expert witness's testimony pertaining to the specifics of Petitioner's case violated an order *in limine*. *See id*. at 5, 7; Dkt. 15 at 6-9.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right from his criminal conviction the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Smith v. Robbins*, 528

U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1101, 1106 (9th Cir.2010). In order to satisfy the *Strickland* standard, a petitioner must demonstrate that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a meritorious issue. *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106. A petitioner must also show prejudice, which in the appellate context requires the petitioner to demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, petitioner would have prevailed on appeal. *Smith*, 528 U.S. at 285–86; *Moormann*, 628 F.3d at 1106.

The Washington Supreme Court rejected Petitioner's ineffective assistance of appellate counsel claim on collateral review of his conviction. The Supreme Court Commissioner explained the court's ruling as follows:

> Serrano argued below that the superior court erroneously allowed a sexual assault nurse examiner to exceed a ruling in limine, and that his appellate attorney was ineffective in not challenging the relevancy of some of the nurse's testimony, a ground on which defense counsel had objected to the testimony at trial. Serrano urges that the acting chief judge mischaracterized his argument as criticizing appellate counsel for failing to challenge the superior court's rulings on hearsay objections to the expert's testimony. But in his petition Serrano did argue that appellate counsel was ineffective in not raising the hearsay objections on appeal. Serrano also raised appellate counsel's failure to argue the relevancy objection, and it is true the acting chief judge did not specifically address that issue, but Serrano does not show he is entitled to relief in any event. To obtain relief on his claim of ineffective assistance of appellate counsel, Serrano must demonstrate the merit of any underlying legal issues counsel failed to raise and then show actual prejudice. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). Serrano neither demonstrates the merits of his evidentiary claims nor shows prejudice. As the acting chief judge noted, Serrano was tried to the bench, where it is presumed the judge did not consider inadmissible evidence. *State v. Blair*, 3 Wn. App. 2d 343, 353, 415 P.3d 1232 (2018). And even if some evidence was improperly allowed, Serrano does not show he was prejudiced in the sense that, had the challenged evidence been excluded, it is reasonably probable the outcome of the trial would have been different. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

Dkt. 14, Ex. 13 at 1-2.

Petitioner fails to demonstrate that this conclusion of the Washington Supreme Court was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent. In this case, the trial court ruled pre-trial that the State's expert could "discuss her expertise and . . . her findings in general as it relates to victim behavior, but she [could not] testify that that was consistent with the victim in this particular case." *See* Dkt. 14, Ex. 17 at 18, 144-45. The nurse practitioner testified generally about the process for interviewing and examining child sexual offense victims, and about common behaviors associated with such children, and she also offered more specific testimony regarding her interview with, and physical examination of, the victim in this case. *See id*., Ex. 17 at 149-56, 158-62. Petitioner fails to clearly identify any portion of the testimony that violated the Court's ruling *in limine* regarding the scope of the expert's testimony. Petitioner's complaint appears to be that the expert's testimony revealed consistencies between the general behaviors of child sexual abuse victims described by the expert and the fact of his case. This does not render the expert's testimony improper.

Moreover, even assuming the expert did offer testimony beyond the scope of what the trial court ruled admissible during pretrial proceedings, as the state court properly noted Petitioner opted for a bench trial and nothing in the record demonstrates that the trial judge considered any inadmissible evidence. Finally, assuming the trial judge did consider such evidence, Petitioner has made no showing that if his appellate counsel had pursued the issue on direct appeal the outcome of his appeal would have been different. For these reasons, Petitioner's federal habeas petition should be denied with respect to his first ground for relief.

*3. Sufficiency of the Evidence*

Petitioner asserts in his third ground for relief that his convictions were based on insufficient evidence because the state failed to prove beyond a reasonable doubt that he committed the crimes of first degree rape and first degree molestation against S.S. Dkt. 7 at 8.

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re: Winship*, 397 U.S. 358, 364 (1970)). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court has made clear that it is the responsibility of the trier of fact, and not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, the Supreme Court has held that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (citing *Cavazos*, 565 U.S. at 2).

The Washington Court of Appeals rejected Petitioner's sufficiency of the evidence claim on direct appeal, explaining its conclusion as follows:

Mr. Serrano contends there was insufficient evidence to find him guilty of either count. We disagree.

When reviewing a claim of insufficiency of the evidence, this court looks to whether the facts, viewed in the light most favorable to the State, would allow a trier of fact to find a defendant guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id*.

When dealing with instances of conflicting testimony, this court defers to the finder of fact to evaluate the persuasiveness of the arguments and testimony. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). This court does not review the credibility determinations made by the trier of fact, which retains sole purview over such determinations. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

In general, Mr. Serrano contends that S.S.'s testimony was contradictory and vague. He notes that S.S. interchangeably used the terms "in" and "on" when describing the sexual contact, she claimed she was abused on over 10 occasions yet her physical examination was normal, she described pain to Ms. Wahl but not to the court, and her testimony was so timid that she was asked several times to repeat what she said or speak louder.

We note that S.S. was 11 years old when she testified. One would expect a young girl to be very uncomfortable talking about sexual abuse to a group of mostly strangers. Also, her use of the terms "in" and "on" may well have been accurate and coincides with the trial court convicting Serrano of both child rape and child molestation.

We also note that six months had elapsed between when Mr. Serrano moved out and when Ms. Wahl physically examined S.S. That allowed time for minor injuries to heal. Ms. Wahl testified that a significant percentage of child victims show no physical trauma because of delayed reporting.

Mr. Serrano is correct that S.S. described the sensations differently to Ms. Wahl and to the court. To Ms. Wahl, S.S. said the penetration was painful. To the court, S.S. testified the penetration felt weird.

Mr. Serrano argues that the inconsistencies here are comparable to those in *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1992). We disagree.

In *Alexander*, a defendant was charged with rape of a child. *Id*. at 149. The child had initially alleged two incidents occurred, one in a bathtub and one with baby oil. *Id*. at 149-50. During the trial, the child testified and said nothing

inappropriate happened in the bathtub or with baby oil. *Id*. at 150. She also seemed to be inconsistent with the dates the incidents supposedly took place. *Id*. at 149. We held that the testimony was extremely inconsistent and no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id*. at 157-58.

Here, S.S.'s testimony never strayed from her initial assertion that Mr. Serrano had sexual contact with her on numerous occasions. She described Mr. Serrano as having placed his penis both on her vagina and in her vagina. Although S.S. described the sensation caused by penetration differently to Ms. Wahl and the court, this inconsistency is far less than those we saw in *Alexander*. We conclude that S.S.'s and Ms. Wahl's testimonies were sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that Mr. Serrano was guilty of rape of a child in the first degree.

Mr. Serrano also argues there was no evidence of sexual gratification offered by the State and thus no evidence of intimate contact. When dealing with a charge of child molestation in the first degree, this court looks to whether the contact between the defendant and the victim was intimate.

> Contact is "intimate" within the meaning of the statute if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper. A jury may determine that parts of the body in close proximity to the primary erogenous areas are intimate parts. Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touch was for the purpose of sexual gratification, although we require additional proof of sexual purpose when clothes cover the intimate part touched.

*State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (internal quotation marks and footnotes omitted). Mr. Serrano argues that he told detectives his pants were pulled down by S.S. while wrestling and his penis only touched her vagina over her pajamas; thus, additional proof of sexual purpose was required. However, S.S. testified during trial that Mr. Serrano told her to take off her clothes. She testified that Mr. Serrano took off his clothes. She also testified that he put his penis both on and in her vagina. The trial court found her testimony to be credible and found Mr. Serrano's testimony not to be credible. We defer to the trial court's determinations of credibility. We conclude that the evidence was sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that Mr. Serrano was guilty of child molestation in the first degree.

Dkt. 14, Ex. 2 at 4-8.

Petitioner fails to demonstrate that the state court's adjudication of his sufficiency of the evidence claim was objectively unreasonable. Petitioner argues that the state failed to produce sufficient evidence to established that he engaged in sexual intercourse or had sexual contact with the victim. Dkt. 15 at 11. In support of this argument, Petitioner points only to the portion of the State expert's testimony in which she explained that her findings with respect to the victim's genital examination were "healthy" and "normal," and that the finding that the victim tested positive for herpes simplex virus one was not necessarily indicative of sexual abuse. *See id*. at 13. Petitioner goes on to discuss at length cases in which the Washington courts addressed the admissibility of expert testimony in child sexual abuse cases without explaining how those cases pertain to the sufficiency of the evidence question presented to this Court for review. *See id*. at 13-16.

This Court's review of the trial transcript confirms the Court of Appeals' description of the evidence presented during trial and the trial court's determinations with respect to the credibility of the victim and of Petitioner. The fact that the State's expert witness found nothing during her physical examination of the victim that could confirm the alleged abuse occurred does not undermine the entirety of the prosecution's case. Indeed, the expert explained that "over 95 percent of genital exams on children, including children who have had penetrating trauma, vaginal trauma, have regular or normal findings. And this is true because the tissue heals and typically children do not disclose immediately. So if time has past [sic], the mucosal tissue has healed, there's no evidence of trauma, if there was trauma in the first place." Dkt. 14, Ex. 17 at 153.

Petitioner's reliance on discrete portions of the expert witness's trial testimony to support his insufficiency of the evidence claim is unavailing. The Washington Court of Appeals

reasonably concluded that, viewing the facts in the light most favorable to the state, and crediting the trial court's credibility determinations, the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Petitioner was guilty of both charged offenses. For these reasons, Petitioner's federal habeas petition should be denied with respect to his third ground for relief.

### C. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

## V. CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied, and this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect

your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 8, 2024**.

DATED this 12th day of February, 2024.

S. KATE VAUGHAN
United States Magistrate Judge